UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RODNEY HAMPTON,                              Civil Action No. 14-13943


     Plaintiff,

                                            HON. R.  STEVEN WHALEN
    v.                                      U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/


**OPINION AND ORDER**

Plaintiff Rodney Hampton ("Plaintiff") brings this action under 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying his applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Social Security Act.  Both parties have filed summary judgment motions.  For the reasons set

forth below, Defendant's Motion for Summary Judgment [Dock. #11] is GRANTED and

Plaintiff's Motion for Summary Judgment [Dock. #9] is DENIED. [1]

_____

[1]

At the time Plaintiff filed his summary judgment motion, he was represented by
counsel.  *Docket #9.*  After the withdrawal of counsel, Plaintiff was permitted to file an
amended motion.  *Docket #16.*  While Plaintiff, now proceeding *pro se*, declined to file an
amended motion, the undersigned has independently reviewed the record for possible
grounds for remand.   In Social Security cases, the failure to submit a brief or a full blown
legal argument "[is] not a prerequisite to the Court's reaching a decision on the merits" or a

## PROCEDURAL HISTORY

On July 20, 2012, Plaintiff filed applications for DIB and SSI, alleging disability as of January 10, 2011 (Tr. 146-152, 153-159). After the initial denial of the claim, he requested an administrative hearing, held June 28, 2013 in Mt. Pleasant, Michigan (Tr. 38). Administrate Law Judge ("ALJ") Kendra S. Kleber presided. Plaintiff, represented by Aaron Lemmens, testified (Tr. 44-59), as did Vocational Expert ("VE") David Holwerda (Tr.59-65). On August 12, 2013, ALJ Kleber found that Plaintiff was not disabled (Tr. 31-33). On August 14, 2014, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the Commissioner's decision on October 13, 2014.

## BACKGROUND FACTS

Plaintiff, born August 22, 1968, was just short of his 45th birthday when the ALJ issued her decision (Tr. 33, 146). He completed a GED and worked previously as a construction worker, retail shop owner, and painter (Tr. 175). His application for benefits alleges disability as a result of bipolar disorder, depression, hypertension, Gastroesophageal Reflux Disease ("GERD"), and "memory problems" (Tr. 174).

### A.    Plaintiff's Testimony

*Plaintiff's attorney prefaced his client's testimony by conceding that the conditions of hypertension, GERD, and diabetes did not create work-related limitations* (Tr. 44). *He*

---

finding, sua sponte, that grounds exist for reversal. *Wright v. Commissioner of Social Sec.,* 2010 WL 5420990, *2 -3 (E.D.Mich December 27, 2010)(Friedman, J.).

stated that the "main focus" of the disability claim was "mental issues" (Tr. 44).

Plaintiff then offered the following testimony:

He had not worked since 2008 or 2009 (Tr. 45). He last worked at a placement agency doing industrial painting (Tr. 45). The job did not require him to lift more than five pounds (Tr. 45-46). He was not sure whether he could return to the job due to symptoms of Carpel Tunnel Syndrome ("CTS") (Tr. 46). His physician had prescribed hand splints several years earlier (Tr. 48-49). Symptoms of CTS included hand numbness caused by painting, hammering, and driving (Tr. 47). Plaintiff "called in sick" several times a month when he did not "feel like doing" his job, attributing his poor motivation to depression (Tr. 48). His former work as a roofer required him to lift up to 80 pounds (Tr. 49). He would be unable to return to the roofer work due to leg and low back pain (Tr. 50).

Plaintiff stood 6' 1" and weighed 300 pounds (Tr. 51). He had diabetes causing chronically high blood sugar spikes (Tr. 51-52). He took daily medication for the condition and had a checkup every three months (Tr. 52). He also experienced memory problems characterized by difficulty memorizing shopping lists or comprehending the gist of a newspaper article (Tr. 52). He experienced bipolar disorder with more "lows" than highs (Tr. 53). His depressive episodes were characterized by the need to "get away from everything" and the failure to take showers or change his clothes regularly (Tr. 53-54). He did not perform any household chores and dined out only "[o]nce in a great while" (Tr. 54-55). He also experienced anxiety attacks around twice each week characterized by agitation

-3-

and anger (Tr. 53). His anxiety attacks were triggered by unremarkable events such as interaction with his wife or his children running through the house (Tr. 54). On a scale of one to ten, he typically experienced level "three or four" energy (Tr. 54). He experienced frequent sleep disturbances (Tr. 55).

Plaintiff denied ever using marijuana (Tr. 55-56). He completed his GED in September, 2010 and went on to complete college courses in web design (Tr. 56). He stopped attending classes after experiencing memory problems (Tr. 57). He also performed volunteer work installing ramps for handicapped individuals (Tr. 58). He acknowledged that he could return to his past work as an installer if required (Tr. 59).

### B.   Medical Evidence[2]

### 1. Treating Sources

August, 2010 treating records state that Plaintiff wanted to lose weight but had no other health complaints (Tr. 277, 329). The same month, Plaintiff reported that he had been "under a lot [of] stress lately" due to "legal issues" (Tr. 274). December, 2010 imaging studies of the right wrist were unremarkable (Tr. 294). January, 2011 psychiatric intake records note Plaintiff's report that he lost his temper easily (Tr. 259). Plaintiff also reported overeating and difficulty sleeping (Tr. 259). He admitted to former marijuana use but denied any other drug use (Tr. 260, 355). Plaintiff reported a happy marriage (Tr. 261). He

---

[2]Treating records predating the January 10, 2011 alleged onset of disability are included for background purposes only.

appeared well-dressed and was fully oriented (Tr. 261). He was assigned a GAF of 70[3] (Tr. 261). Medical treatment notes from the same month state that Plaintiff reported ongoing shooting pain in the right arm and wrist and the use of wrist splints (Tr. 317). The following month, he reported good results from Abilify but continued having problems sleeping (Tr. 258).

In March, 2011, Plaintiff reported feeling good but unmotivated (Tr. 257). He was assigned a GAF of 57[4] (Tr. 247). The following month, he reported a panic attack where the "walls [were] closing in," but denied sweating (Tr. 255-256). In June, 2011, Plaintiff reported that his condition was stable and that he was sleeping eight hours a night (Tr. 254). His depression was characterized as "mild" (Tr. 245, 364). The same month, a nail was removed from his left forearm (Tr. 292). August, 2011 records state that he was doing well and sleeping "just fine" but reported "small panic attacks" (Tr. 253-254). Plaintiff stated that he did not "get angry anymore" (Tr. 242). Glucose readings from the same month were elevated (Tr. 337).

A January, 2012 medication review states that Plaintiff was sleeping well but continued to experience anxiety (Tr. 251). In March, 2012, Plaintiff reported depression

---

[3]

GAF scores in the range of 61-70 indicate 'some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning.' *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 ("*DSM-IV-TR*") (4th ed. 2000).

[4]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning., *DSM-IV-TR* at 34.

-5-

because he had to drop classes due to memory problems (Tr. 238). A June, 2012 medication review states that Plaintiff had experienced one "bad day" in which he had a memory lapse but was otherwise doing well (Tr. 237, 250). He was prescribed a smaller dosage of psychotropic medication (Tr. 250). An undated assessment includes a GAF of 47[5] (Tr. 235).

A December, 2012 ultrasound showed fatty infiltration of the liver (Tr. 344). The same month, Plaintiff reported memory problems including forgetting his own name while signing a paper and forgetting where he was going while driving (Tr. 342). Therapy notes state that Plaintiff was still experiencing memory problems (Tr. 358). April 2013 psychological treating records state that Plaintiff's condition was stable (Tr. 371).

### 2. Non-Treating Sources

In September, 2012, psychologist Michael Brady, Ph.D. performed a consultative examination, noting Plaintiff's report of depressive symptoms for the past several years including low self esteem, social isolation, concentrational problems, sleep disturbances, and irritability (Tr. 303). Plaintiff reported that he enjoyed playing computer games and working on woodworking projects (Tr. 304). He reported that he shared the "cooking and cleaning" chores with his wife (Tr. 304). Dr. Brady observed a normal thought process with a depressed mood (Tr. 304-305). Dr. Brady found that Plaintiff's ability to interact with others was impaired and that his work effectiveness would "likely be limited and slowed" due to

---

[5]A GAF score of 41-50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *DSM-IV-TR* at 34.

depression (Tr. 306).  He assigned Plaintiff a GAF of 58 (Tr. 306).

The same month Bruce G. Douglass, Ph.D. performed a non-examining review of the treating and consultative psychological records, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 71).  He concluded that Plaintiff could perform routine, two-step tasks on a sustained basis (Tr. 74).

### C.    Vocational Expert Testimony

VE David Holwerda classified Plaintiff's former work as a house repairer as skilled and exertionally heavy (medium as performed) and painter, unskilled/medium[6] (Tr. 61).  The ALJ then described a hypothetical individual of Plaintiff's age, education and work experience:

> He is able to perform work that is limited to simple, routine, or repetitive tasks, with only rare interaction with the public is less than occasional, and that interaction should be superficial.  Can involve occasional and superficial interaction with coworkers, and the work should be low stress that is routine and predictable defined as involving no more than occasional changes in the work to be performed in the work setting.  Now, first of all would such a

---

[6]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

person be able to perform Mr. Hampton's past work? (Tr. 62).

The VE replied that given the above limitations, the individual could perform Plaintiff's past relevant work as a brush painter as well as the "other" unskilled work of a janitor or building cleaner, commercial cleaner, and a machine operator (Tr. 63).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Kleber found that Plaintiff experienced the "severe" impairment of an "affective disorder," but that the condition did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22).  She found that the conditions of CTS, hypertension, GERD, and diabetes were "non-severe" impairments, finding that none of the conditions caused more than minimal limitations in Plaintiff's work-related activity (Tr. 21-22).  The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 23-24).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for "a full range of work at all exertional levels" with the following additional non-exertional limitations:

> [H]e is limited to simple, routine, and repetitive tasks.  He can have only rare and superficial interaction with the public.  He can have occasional and superficial interaction with coworkers.  He is limited to low stress work that is routine and predictable, defined as involving no more than occasional changes in the work to be performed or in the work setting (Tr. 25).

The ALJ determined that Plaintiff could perform his past relevant work as a painter (Tr. 31).

Citing the VE's testimony, the ALJ found that Plaintiff could also perform the unskilled work

-8-

2:14-cv-13943-RSW    Doc # 19    Filed 03/31/16    Pg 9 of 14    Pg ID 488

of an industrial cleaner, commercial cleaner, or machine operator (Tr. 32).

The ALJ discounted Plaintiff's allegations of disabling limitation. She noted that Plaintiff was able to interact with his family and did not experience problems getting along with friends, neighbors, or authority figures (Tr. 30). She noted further that Plaintiff's volunteer work building ramps approximately 30 hours each week supported the finding that "his symptoms and limitations may have been overstated (Tr. 30). The ALJ observed that while Plaintiff denied marijuana use at the hearing, he told a treating source in January, 2011 that he used marijuana in "his younger days" (Tr. 30).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health &*

-9-

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-10-

## ANALYSIS

### Substantial Evidence Supports the ALJ's Decision

"To meet the burden of showing that [Plaintiff] could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Howard v. Commissioner of Social Security,* 276 F.3d 235, 238 (6th Cir. 2002)(citations omitted). Considering Plaintiff's RFC, age, education, work experience, and the testimony of the VE, the ALJ found that Plaintiff had the ability to perform his former work as a brush painter (Tr. 31).

Substantial evidence supports the RFC. At Step Two of the analysis, the ALJ found that Plaintiff's "severe" impairment was an affective disorder (Tr. 21). The ALJ supported her finding that diabetes, high blood pressure, obesity, and GERD were "non-severe" impairments by noting that the conditions were well controlled with medication (Tr. 21). She found correctly that the record did not contain a diagnosis of CTS[7] (Tr. 22).

My own review of the record supports the finding that the physical limitations were non-severe. March, 2011 records state that Plaintiff felt "good" (Tr. 257). August, 2011

---

[7]

While the ALJ is technically correct that the record does not contain a diagnosis of CTS, October, 2010 and January, 2011 treating records make reference to "tendonitis" of the right wrist and arm requiring the use of a wrist splint (Tr. 316-317). However, assuming that Plaintiff experienced some degree of upper extremity limitation, none of the treating records created before October, 2010 or after January, 2011 make reference to wrist or arm problems. As such, he is unable to show that the condition lasted for the 12-month period required to show impairment or disability. 42 U.S.C. §423(d)(1)(A).

-11-

records state that he was sleeping "just fine" and doing well overall (Tr. 253-254). June, 2012 records state that he was generally doing well (Tr. 237). Neither the medical nor psychological treating records suggest that Plaintiff experienced significant physical limitations.

In addition, the ALJ noted, the RFC for "simple, routine, and repetitive tasks;" "rare and superficial interaction with the public;" "superficial interaction with coworkers" and "low stress work" is consistent with Dr. Douglass' September, 2012 findings (Tr. 23-24, 30-31, 71) and Plaintiff's own testimony. The ALJ noted that Plaintiff was able to volunteer building ramps for approximately 30 hours each week (Tr. 30, 58). The psychological treatment records show that Plaintiff interacted with family members and had sustained a happy marriage for many years (Tr. 261). Plaintiff completed his testimony by acknowledging that he could return to work if required (Tr. 59).        The Step Four findings are likewise well supported. Consistent with the VE's testimony, the DOT lists the occupation of brush painter as exertionally medium and unskilled.[8]  DOT Code 740.684-022. The RFC for work at all exertional levels would allow Plaintiff to perform the brush painter position both as actually performed (heavy exertional level) or, as generally performed in the national economy at the medium level. *Id.*; SSR 82–61, 1982 WL 31387, *2 (1982)(Step Four determination can be

---

[8]      The DOT classifies the brush painter position as an "SVP 2" position. Specific Vocational Preparation ("SVP") 2, requiring "up to and including one month" training is classified as unskilled work. http://www.occupationalinfo.org. (Last visited March 20, 2016); SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000)

supported by the finding that claimant can perform past relevant work as "actually performed," or, "as generally required by employers throughout the national economy"). Because substantial evidence supports the finding that Plaintiff can perform his past relevant work as actually or generally performed, the Step Four findings should remain undisturbed. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003)(at Step Four, claimant "bears the burden of proving the existence and severity of limitations caused by [the] impairments and . . . that []he is precluded from performing [the] past relevant work" either as previously performed or as generally required in the national economy).

The ALJ's alternative Step Five conclusion is also supported by substantial evidence. The hypothetical question to the VE, mirroring the limitations found in the RFC, generously accounts for Plaintiff's psychological restrictions (Tr. 25, 62). In response to the hypothetical question, the VE testified that limitations posed therein would not prevent the performance of a significant range of exertionally medium, unskilled work (Tr. 63). Because the question to the VE accurately reflected Plaintiff's limitations, the ALJ did not err in adopting the corresponding job testimony. *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987)("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question," so long as the question "accurately portrays [the] plaintiff's individual physical and mental impairments" (internal citations omitted).

I appreciate that Plaintiff disagrees with the ALJ's conclusions. However, this Court's

-13-

review under the "substantial evidence" standard is highly deferential, and it is not our function to re-weigh the evidence or make our own, independent (de novo) disability determination. Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In this case, both the RFC and the ALJ's ultimate non-disability decision are supported by substantial evidence.

For these reasons, Defendant's Motion for Summary Judgment [Dock. #11] is GRANTED and Plaintiff's Motion for Summary Judgment [Dock. #9] is DENIED.

Judgment will be entered in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: March 31, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 31, 2016, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager

-14-